584 P.2d 174

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Dante SCHIFANI, Defendant-Appellant.**

**No. 3470.**

Court of Appeals of New Mexico.

Aug. 8, 1978.

Writ of Certiorari Denied Sept. 14, 1978.

Jack Smith and Stephen C. M. Long, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Dennis P. Murphy, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

The evidence shows that, as a part of a continuing scheme, defendant obtained money, or checks which he cashed, from the victims and used the money for his own purposes. Convicted of two counts of fraud

(Counts I and III), and one count of embezzlement (Count II), defendant appeals. We discuss: (1) severance and (2) Evidence Rule 404(b). Other issues argued (some were abandoned, *State v. Evans*, 89 N.M. 765, 557 P.2d 1114 (Ct.App.1976) go to the sufficiency of the evidence. In answering the evidentiary claims, we discuss: (3) defendant's use of promissory notes in connection with all counts; (4) the victims' illegal conduct in connection with all counts; (5) defendant's representations in connection with the frauds; and (6) ownership of the checks, conversion and repayment in connection with the embezzlement.

*Severance*

■ Each of the three counts charged fraud, or in the alternative, embezzlement. A pretrial motion sought "to separate and bifurcate each count into separate trials". At a pretrial hearing on this motion, the only argument went to the propriety of alternative pleading. See *State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App.1977); *State v. Gurule*, 90 N.M. 87, 559 P.2d 1214 (Ct. App.1977). The motion was continued; there was no ruling on the motion prior to trial.

After the jury was sworn, defendant moved that the State be required to elect on which count it would proceed. This motion was denied. In arguing the motion to elect, defendant also argued that the three counts should be severed. Assuming that this argument alerted the trial court to the severance claim, and assuming the trial court's denial of the motion to elect was also a denial of a motion to sever, we consider the severance claim on the merits.

This issue involves the severance of counts against a single defendant. The applicable rule is Rule of Crim.Proc. 34(a) which authorizes severance "[i]f it appears that a defendant . . . may be prejudiced". This rule "leaves the decision to grant or deny a separate trial largely in the hands of the trial court." *State v. Rondeau*, 89 N.M. 408, 553 P.2d 688 (1976). The appellate issue is whether the trial court abused its discretion in denying the motion to sever. *State v. McGill*, 89 N.M. 631, 556 P.2d 39 (Ct.App.1976).

Defendant points out that the three counts involved different victims and different dates for the offenses. He also points out that evidence of "other wrongs" was admitted under Evidence Rule 404(b). He asserts the verdicts against him were "unsound" because "not based on the evidence relating to any one charge but on a large volume of adverse evidence which would not have been sufficient to convict him in separate trials."

We disagree. Substantial evidence supports each of the convictions. The "adverse evidence" admitted was relevant to each of the charges being tried. In reaching its verdicts, the jury followed the evidence and applied it to each count. The conviction under Count I was for fraud over $2,500 and not the alternative charge of embezzlement. The conviction under Count II was for embezzlement over $2,500 and not the alternative charge of fraud. The conviction under Count III was for fraud under $2,500 and not the alternative charge of embezzlement. *State v. McGill*, supra; *State v. Sero*, 82 N.M. 17, 474 P.2d 503 (Ct.App. 1970).

The trial court did not abuse its discretion in denying the motion to sever.

*Evidence Rule 404(b)*

■ This evidence rule permits the admission of evidence of other wrongs to show, among other things, a defendant's "intent" and "plan". The trial court admitted the testimony of persons, other than the victims' in the three counts being tried, who testified to dealings with defendant similar in nature to the victims' dealings with defendant. This testimony was admitted to show defendant's intent, and a common scheme or plan; the testimony was clearly relevant for that purpose. *State v. McCallum*, 87 N.M. 459, 535 P.2d 1085 (Ct.App. 1975).

Defendant asserts that the prejudice from this testimony outweighed its usefulness in establishing any plan or scheme.

This claim involves Evidence Rule 403; see *State v. Day*, 91 N.M. 570, 577 P.2d 878 (Ct.App.1978). When the trial court has applied the balancing approach required by Evidence Rule 403, the appellate issue is whether the trial court has abused its discretion. *State v. Fuson*, 91 N.M. 366, 574 P.2d 290 (Ct.App.1978). In determining whether discretion was abused, we consider the probative value of the testimony. The probative value of the "other wrongs" testimony was significant because it tended to negate defendant's claim that his transactions with the three sets of victims in this case were no more than loans. There was no abuse of discretion in admitting the "other wrongs" testimony.

### Defendant's Use of Promissory Notes

■ In the two fraud offenses, defendant obtained money from the victims; in the embezzlement offense, defendant obtained checks from the victims and later cashed them. Throughout, defendant gave the victims promissory notes in an amount equal to the money or checks, plus the monetary amount of a promised return.

Defendant asserts the promissory notes show commercial transactions in which he borrowed money, evidenced by the promissory notes given. This contention overlooks the evidence to the contrary. The fraud victims testified the money defendant received from them was for investment purposes. There was evidence that the promissory notes given to the embezzlement victims included "tremendous profits" over and above the amount of the checks.

With conflicting evidence whether the money and the checks were loans, or were for investments, was for the jury to decide.

### Victims' Illegal Conduct

■ In connection with Counts I and II defendant infers, and in connection with Count III defendant specifically claims, that usurious interest was involved. This contention is based on the amount of the various promissory notes over and above the money, or the amount of the checks received, by defendant.

Defendant seems to contend that the victims' willingness to obtain usurious interest somehow mitigates his conduct. "[T]he great weight of authority holds appellant [defendant] amenable, regardless of the fact that his victim was himself ready and willing to commit an offense." *State v. Foster*, 38 N.M. 540, 37 P.2d 541, 95 A.L.R. 1247 (1934).

Assuming the "return" over and above the amount of money or checks was usurious interest, such does not aid defendant.

### Defendant's Representations

Fraud, as defined in § 40A–16–6, N.M. S.A. 1953 (2d Repl. Vol. 6) requires "fraudulent conduct, practices or representations." See *State v. Thoreen*, 91 N.M. 624, 578 P.2d 325 (Ct.App.1978).

(a) Defendant states "at a minimum, the Defendant must have made some representation to the complainants *before* any money changed hands." (Emphasis his.) Defendant asserts there were no such representations.

■ (b) As to Count I, there was evidence that the victims did not know where their money was going before it was turned over to defendant. However, there was also evidence that defendant represented the money would be used as an investment, and that it was not so used. The fact that the victims did not know the type of investment does not aid defendant because the evidence shows that defendant obtained the money by fraudulently representing the money would be invested.

■ (c) As to Count III, defendant argues that his fraudulent representations as to all but one of the transactions should be ignored because of his repayments. This is fallacious. "Once the misappropriation or taking occurs, and this occurrence is by means stated in the statute, the crime of fraud is complete." *State v. Thoreen*, supra. Defendant's fraud was complete when he got the money from the victims; repayment did not mitigate defendant's offense. *United States v. Braverman*, 552 F.2d 218

(7th Cir. 1975), cert. denied, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975); *People v. Ross*, 25 Cal.App.3d 190, 100 Cal.Rptr. 703 (1972); see *State v. Odom*, 86 N.M. 761, 527 P.2d 802 (Ct.App.1974). The fraud being complete when defendant obtained the money, the fact that he ultimately repaid the Count III victims an amount of money greater than the amount he obtained, does not show the crime did not occur and did not mitigate the offense.

■ As to one of the Count III transactions, defendant asserts he made no representations to the victims in obtaining their money because he did not tell the victims where their money was going. Here, as in the Count I transactions, defendant overlooks the evidence that he represented that the money would be invested and that he obtained the money on the basis of this false representation.

(d) As to the fraud transactions in both Counts I and III, defendant claims the trial court erred in admitting evidence of representations made to the victims *after* he obtained their money. These representations went into the specific details of the alleged investments. These representations were properly admitted since they explained defendant's "investment" representations and tended to show defendant's intent.

*Ownership of the Checks, Conversion and Repayment in Connection with the Embezzlement*

"Embezzlement consists of the embezzling or converting to his own use of anything of value, with which he has been entrusted, with fraudulent intent to deprive the owner thereof." Section 40A–16–7, N.M.S.A. 1953 (2d Repl. Vol. 6); see *State v. Moss*, 83 N.M. 42, 487 P.2d 1347 (Ct.App. 1971).

(a) Defendant contends that his embezzlement conviction cannot stand because when he obtained the checks from the victims in Count II, he issued promissory notes to the victims and, thus, "title and ownership . . . vested in Defendant. Title and ownership thus being vested in Defend-

ant, he could not have appropriated the property of another." Defendant argues "as a matter of law" that he could not have embezzled the money represented by the checks.

■ This argument overlooks evidence to the contrary. This evidence was that the victims gave checks to defendant, knowing they had insufficient funds in the bank to cover the checks, on defendant's representations that defendant wanted the checks to show to investors. "Al, give me a check for $500.00 and I will not even take it to the bank." There was evidence that defendant obtained approximately $10,000 in checks in this manner; that is, by promising they would not be cashed. This evidence raised a factual question as to whether ownership of the funds represented by the checks passed, or was intended to pass to defendant. *State v. Cramer*, 90 N.M. 157, 560 P.2d 948 (Ct.App.1977). With this evidence, ownership of the checks cannot be held to have passed as a matter of law.

(b) Contrary to his promises, defendant cashed several of the checks. The checks were cashed at a grocery store. After the checks were cashed, defendant would call the bank to see if the cashed check would clear and then would deposit sufficient money, obtained from cashing the check into the victims' account in order that the cashed check would in fact clear the bank. By this method, defendant covered approximately $3,900 in checks.

■ (c) Defendant was convicted of embezzling over $2,500. He points out that the victims in Count II "lost no more than $2150" and, on this basis, argues he can only be convicted of embezzling less than $2,500, and his present embezzlement conviction must be reversed.

The fact that the victims eventually "lost" an amount less than $2,500 is not dispositive. There was substantial evidence that defendant, with the requisite fraudulent intent, negotiated checks in the amount of $3,900 for his own use, checks which defendant had been entrusted to hold and not cash. Under the definition of embezzlement in § 40A–16–7, supra, the embezzle-

ment was complete when defendant converted those checks. See 2 Wharton's Criminal Law and Procedure, § 516 (1957). The fact that a portion of the $3,900 was repaid, so that the victims lost only $2,150, does not aid defendant. Restitution does not allow the embezzler to escape prosecution and conviction. *People v. Rafalko*, 26 Mich.App. 565, 182 N.W.2d 732 (1970); *Sherman v. State*, 234 Miss. 775, 108 So.2d 205 (1959).

■ (d) Defendant tendered proof that the victims in Count II had filed a civil lawsuit "against Defendant on the promissory notes . . . praying for $2150 and . . . [were awarded] judgment for $1050." Defendant asserts this tender was improperly rejected because it tended to prove an embezzlement of less than $2,500. We disagree. We are not concerned with the *amount owed* by defendant; our concern is with the *amount converted* in violation of § 40A–16–7, supra. The amount of defendant's ultimate civil debt did not tend to controvert the showing as to the amount converted. The tender as to the civil debt was not relevant to the amount converted and was properly refused.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.