503 P.2d 826

**STATE of Arizona, Appellee,**

**v.**

**Jesse E. JACOBS, Appellant.**

**No. 2 CA–CR 292.**

Court of Appeals of Arizona,
Division 2.

Nov. 30, 1972.

As Corrected on Denial of Rehearing
Jan. 3, 1973.

Review Denied Jan. 30, 1973.

Barber, Haralson, Giles & Moore, by Dale Haralson, Tucson, for appellants.

Lesher & Scruggs, by D. Thompson Slutes, Tucson, for appellees.

**472**

Gary K. Nelson, Atty. Gen., by John S. O'Dowd, Asst. Atty. Gen., James P. F. Egbert, Certified Third Year Law Student, University of Arizona Law School, Tucson, for appellee.

Murray Miller and Philip M. Haggerty, Phoenix, for appellant.

HATHAWAY, Judge.

This is an appeal from a conviction of appellant, a medical doctor, charged with a violation of A.R.S. § 36–1017, specifically that on the 3rd day of January, 1969, he did "obtain a narcotic drug to wit Percodan, by means of deceit and subterfuge." The jury returned a verdict of guilty and the defendant was sentenced to a term of 1 to 3 years in the state prison.

The facts of the case are undisputed. On January 3, 1969, Mrs. Frankie Knight was employed as a clerk at the Gila County Hospital in Globe, Arizona. She had enjoyed a close doctor-patient relationship with Dr. Jesse Jacobs, appellant herein, for a period of approximately six or seven years prior to trial. Dr. Jacobs often dispensed Percodan, a narcotic, to Mrs. Knight from his medical bag without a prescription in order to relieve the severe pain from which she suffered. On the day in question, January 3, 1969, Dr. Jacobs approached Mrs. Knight at the hospital administration office and asked her to obtain a prescription for him which she did. He then filled out the form, prescribing Percodan for Mrs. Knight and gave it to her. She obtained the Percodan from the hospital pharmacy, located thirty feet away from where the conversation took place, immediately returned the drug to him, and was reimbursed for the cost. No evidence was introduced to indicate that appellant initially obtained the drug for anyone other than himself; neither was there any explanation as to why he paid for the prescription as it was in Mrs. Knight's name.

Based on the occurrence of January 3, 1969, Dr. Jacobs was prosecuted for violation of A.R.S. § 36–1017 which reads as follows:

"A. No person shall obtain or attempt to obtain a narcotic drug, or procure or attempt to procure the administration of a narcotic drug by:

1. Fraud, deceit, misrepresentation or subterfuge."

Appellant raises various claims of error on appeal. However, we will address ourselves to only three which we believe to be dispositive.

■ Appellant argues that because a physician is entitled under A.R.S. § 36–1007 to prescribe, administer and dispense narcotic drugs he is exempted by this statute and therefore has committed no crime. It is true that A.R.S. § 36–1007 gives certain privileges to physicians or doctors with respect to prescribing, administering and dispensing of narcotics. However, there is no reference to a privilege of *obtaining* narcotics. Further, A.R.S. § 36–1017 specifically states "no person (without any reference to exceptions) shall obtain or attempt to obtain a narcotic drug [by means of] fraud, deceit, misrepresentation or subterfuge."

The purpose of the Uniform Narcotic Drugs Act is to control and regulate narcotics. 9B U.L.A. pp. 410–411. In order to control and regulate the amount of narcotics which a physician obtains for his private practice, he is required to follow a procedure whereby he notifies the narcotics authorities of the amount of narcotics he has ordered from pharmaceutical companies. If notification were not required, there would be no way of knowing the amount of narcotics which physicians obtained, and consequently a physician could be dispensing narcotics in large quantities for sale. One method whereby a physician might obtain narcotics in large quantities without arousing suspicion is to use a third person. He might ask a patient to obtain a certain narcotic for him in the patient's name, thus the records would show that the narcotic was was for the patient's use. In such a situation a physician has two sources, he can obtain narcotics from the pharmaceutical companies on his physician's order form and also through third persons without using his own name. This was one of the reasons A.R.S. § 36–1017 specifically did not exempt anyone from its provisions. Since the evidence discloses that Dr. Jacobs was using a third party to possibly obtain narcotics for himself, he is not exempted from the provisions of A.R.S. § 36–1017.

█ Appellant contends that since he had the right to lawfully purchase and possess the narcotics in question, he could not be prosecuted for the offense. The argument is without merit since it was clearly the intent of the legislature to designate the acts set forth in A.R.S. § 36–1017 as crimes separate and distinct from the offense of unlawful possession of such drugs. State v. Broadnax, 216 La. 1003, 45 So.2d 604 (1950).

█ At trial over the objection of defense counsel, evidence was introduced of another conversation between Dr. Jacobs and Mrs. Knight which took place three months after the occurrence in question. During the conversation Dr. Jacobs asked Mrs. Knight "to fill a prescription for him" which request Mrs. Knight refused. The testimony was admitted on the basis that it demonstrated a common scheme or design. Appellant now contends that this was prejudicial error. The prescription was not introduced into evidence nor was it shown that it was for a narcotic or for a drug requiring a doctor's prescription.[1] In fact, the testimony amounted to nothing more than that the conversation took place.

█ It is well settled that evidence which shows that a defendant has committed or may have committed other crimes is prejudicial and inadmissible. State v. Hughes, 102 Ariz. 118, 426 P.2d 386 (1967); State v. Garcia, 96 Ariz. 203, 393 P.2d 668 (1964). However, evidence of other crimes is competent when it tends to establish intent and absence of mistake or accident, identity and control and common scheme or plan. State v. Hardin, 99 Ariz. 56, 406 P.2d 406 (1965). In the case *sub judice* the evidence was introduced to show common scheme or design. However, this evidence has no evidentiary value unless it also tends to prove other elements of the crime. State v. Hays, 17 Ariz.App. 202, 496 P.2d 628 (1972); State v. Waits, 1 Ariz.App. 463, 404 P.2d 729 (1965).

The state points out that the jury could, from this evidence, infer intent and guilty knowledge. In State v. Washington, 103 Ariz. 605, 447 P.2d 863 (1968), the defendant was being prosecuted for forgery, and evidence was introduced of a prior attempt on the same day to cash a check. The evidence showed only that the defendant had attempted to cash a check, however, there was no indication that the check was forged. The court remanded the case because of the prejudicial effect of this evidence and stated:

"To infer that the first check was a forgery when in fact it may have been genuine, and from that inference draw the

---

1. It is not uncommon for a physician to write a "prescription" for medicine which can be readily obtained over the counter without a prescription.

**474**

other inferences as to the subject check is to permit a conviction entirely on inference." 103 Ariz. at 608, 447 P.2d at 866.

So here to permit the inference that the subsequent request was for narcotics when the request could have been for almost any medicine, and from the inference draw the other inferences as to the subject request is to permit a conviction entirely on inferences. State v. Turner, 104 Ariz. 469, 455 P.2d 443 (1969); State v. Washington, supra; State v. Hughes, supra; State v. Hays, supra; State v. Waits, supra.

For the foregoing reasons, the judgment of conviction is reversed and the case is remanded for new trial.

KRUCKER, C. J., and HOWARD, J., concur.