142 N.J. Super. 167 (1976)
361 A.2d 47
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HENRY VACCARO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 13, 1976.
Decided May 25, 1976.
*171 Before Judges LYNCH, LARNER and HORN.
Mr. Raymond P. Shebell argued the cause for appellant (Mr. Thomas F. Shebell, attorney).
Mr. William F. Bolan, Jr., Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General, attorney; Mr. Howard Allen Cohen, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by LARNER, J.A.D.
Defendant, a practicing licensed physician, was convicted on six counts of dispensing and selling controlled dangerous substances to named individuals (N.J.S.A. 24:21-19), one count of failure to keep records and maintain inventories of controlled dangerous substances (N.J.S.A. 24:21-13), and one count of knowingly maintaining premises resorted to by persons using controlled dangerous substances (N.J.S.A. 24:21-21(a) (6)). The trial judge imposed suspended consecutive State Prison sentences of 3-5 years on each count plus fines totalling $40,000.
In general, the theory of the State's case and the jury's finding of guilt were bottomed upon the charge that defendant *172 dispensed and sold controlled dangerous substances over a considerable period of time directly to six alleged patients under circumstances which established that he did not do so in good faith in the course of his professional practice.[1]
The count on the failure to keep records and maintain inventories of controlled dangerous substances was founded on testimony of a pharmacist employed by the Division of Narcotic Drug Abuse Control. He testified as to an audit of defendant's records which revealed that a portion of the requisite records did not exist, while those records which were available showed substantial unexplained discrepancies.
It is manifest that the evidence of guilt was compelling beyond a reasonabe doubt. And since defendant does not contest the propriety of the jury verdict in that respect, it is not essential to summarize the evidential facts presented by the extensive trial transcript except as they may become significant in the evaluation of appellant's assignments of error.

I
Defendant urges for the first time on appeal that a licensed and registered physician is beyond the reach of the criminal penalties of N.J.S.A. 24:21-19, and that, in the alternative, the good faith standard of N.J.S.A. 24:21-15 is unconstitutionally vague. In some inexplicable way he associates this contention, which was never projected at trial, with the judge's charge.
On the first alternative position he urges that a licensed physician who has been registered as a dispenser of drugs is totally exempt from the criminal sanctions of the statute. Such a contention is wholly without merit.
*173 A physician's license and registration authorizes him to dispense controlled dangerous substances, but the statute makes it clear that he is immune from criminal liability when he dispenses the same "in good faith * * * in the course of his professional practice only." If he engages in dispensing or selling such drugs beyond the necessities of the good faith practice of his profession, he is no less a "pusher" of drugs  a criminal  than a layman unadorned by the trappings of a license or registration. See United States v. Moore, 423 U.S. 77, 96 S.Ct. 310, 46 L.Ed.2d 219 (1975), for cases involving analogous federal statute.
Defendant further asserts that simply because one section of the statute dealing with the exemption of medical practitioners who dispense the prohibited drugs directly in good faith in the course of their professional practices only (N.J.S.A. 24:21-15) does not contain a reference to criminal penalties for its violation, he cannot be held criminally liable for dispensing in bad faith. Apparently, he believes that the inclusion of the criminal penalties in a separate section (N.J.S.A. 24-21-19) absolves him from criminal responsibility for violation of the act. This argument is patently frivolous and requires no discussion. R. 2:11-3(e) (2).
Equally frivolous is the assertion that the statutory standard of good faith made applicable to exempt physicians who dispense controlled dangerous substances is unconstitutional for vagueness.
A physician who is honest and ethical, and dispenses the prohibited drugs in a good faith effort to treat and cure patients, has no fear of the criminal sanctions of the statute. However, his mere status as a licensed physician who has been properly registered as a dispenser of the prohibited drugs does not give him the blanket right to abuse his authority and profession by dispensing drugs without relation to his sworn professional obligations. See United States v. Moore, supra; United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493 (1919); Webb v. United States, *174 249 U.S. 96, 39 S.Ct. 217, 63 L.Ed. 497 (1919); Commonwealth v. Miller, 361 Mass. 644, 282 N.E.2d 394 (Sup. Jud. Ct. 1972); State v. Jacobs, 18 Ariz. App. 471, 503 P.2d 826 (Sup. Ct. 1972). And when the statute circumscribes the limits of his exemption from its criminal consequences by the utilization of the term "good faith," he knows full well what this means and how he must comport himself. There is nothing vague or ambiguous about the requirement that the legal dispensing of drugs by a physician must be carried out "in good faith" in the course of his professional practice only. See United States v. Collier, 478 F.2d 268, 271 (5 Cir.1973); People v. Kass, 74 Misc.2d 682, 346 N.Y.S.2d 641, 644 (App. Div.), aff'd 32 N.Y.2d 856, 346 N.Y.S.2d 274, 299 N.E.2d 685 (Ct. App. 1973); People v. Downes, 394 Mich. 17, 228 N.W.2d 212 (Sup. Ct. 1975). It is a standard which is clear and understandable to the mind of any reasonable physician and is therefore beyond constitutional attack. See State v. Moretti, 52 N.J. 182, cert. den. 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968).

II
[The court reviewed the charge in detail and found that it was not improper, or that it misled the jury]

III
[The court here found unobjectionable the testimony of the State's expert medical witness]

IV
[The court concludes that the prosecutor's statements on summation, considered together with the trial judge's appropriate jury instructions, provided no ground for reversible error.]

*175 V
Defendant contends that the trial judge committed prejudicial error when he refused to allow defense counsel to elicit on cross-examination of certain witnesses facts which were relevant to their bias or prejudice. A review of the record demonstrates that the witnesses involved in this issue are Debra Evans, Lucinda Leary, Michael Newcombe and Richard Johnson.
Evans' testimony was an integral part of the State's proofs concerning the allegations of the tenth count of the indictment which charged that defendant had on 79 occasions distributed and sold to Evans between January 22 and October 2, 1972 controlled dangerous substances. Defense counsel was not allowed to establish through cross-examination that Evans had received suspended sentences following several convictions in 1971, 1972 and 1973.
Lucinda Leary testified in support of the allegations of the eighteenth count of the indictment which charged defendant with maintaining his office for the purpose of keeping and selling controlled dangerous substances from March 18, 1970 to January 13, 1973. Defendant was denied the right to cross-examine Leary with respect to an indictment against her which had been dismissed in March 1973.
Michael Newcombe's testimony was crucial to establish the allegations of the ninth count which charged defendant with distributing and selling to Newcombe controlled dangerous substances on different occasions between November 26, 1971 and January 13, 1973. Defendant was acquitted on this count. He was not allowed to show on cross-examination that Newcombe had been put on probation after a criminal conviction.
The testimony of Richard Johnson was crucial to establish the allegation of the twelfth count which charged defendant with distributing and selling to Johnson controlled dangerous substances between December 18, 1971 and January 6, 1972. Defense counsel was not permitted to establish *176 that Johnson had been placed on probation after convictions for breaking and entering.
There is no question that the right to confront and cross-examine witnesses is constitutionally guaranteed. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Only the parameters of this right are subject to dispute.
In Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the court explicitly recognized that the eliciting of facts which are relevant to the issue of a witness' bias or motivation is an integral part of the sixth amendment right of confrontation. However, the court also noted that this right was subject to the broad discretion of the trial judge to control the extent of the questioning for the purpose of efficient trial disposition. See also, State v. Hare, 139 N.J. Super. 150 (App. Div. 1976).
Bias was the avowed purpose of the questioning of defense counsel already referred to. The trial judge felt that if cross-examination were permitted it would create numerous collateral issues with respect to whether witnesses did in fact receive favorable treatment at the State's hands. He was of the opinion that favorable treatment of a witness by the State could be shown only if defendant was prepared to prove that there was such an express or implied agreement between the witness and the State.
Whether a witness actually received favorable treatment is not a sine qua non to appropriate cross-examination relating to colorable bias of the witness toward the State because of possible favorable treatment in connection with criminal charges. The test of propriety of questions addressed to credibility is not necessarily whether there was an arrangement to grant the witness concessions. It is as relevant and significant for a defendant to demonstrate the state of mind of the witness based on his subjective reactions to the favorable treatment he may have received or may hope to receive in connection with his own criminal involvement. State v. Taylor, 49 N.J. 440, 447-449 (1967); *177 State v. Curcio, 23 N.J. 521, 523-525 (1957); State v. Blue, 124 N.J. Super. 276 (App. Div. 1973). This is a proper facet of proof relevant to bias and motivation which may be considered by the jury in assessing the credit to be given to the witness and his testimony.
It is clear that refusal to permit defense counsel to explore the witness' possible beliefs with regard to the relationship between the criminal dispositions and the cooperation of the witnesses with the State was error. Ibid. See State v. Gray, 67 N.J. 144, 147 (1973). And this follows whether the possible favorable treatment took the form of a reduction in sentence, a noncustodial term, or a dismissal of an indictment or a complaint.
This does not mean that such cross-examination may not be limited by the court in an appropriate case because of remoteness or other grounds within the ambit of Evid. R. 4.
State v. Spano, 69 N.J. 231 (1976), deals with an analogous situation. In that case the witness had been previously arrested for possession of a controlled dangerous substance and had been placed in a program under N.J.S.A. 24: 21-27 on the recommendation of the prosecutor, which could have resulted in a dismissal of the indictment on successful completion of the program. The court noted:
This was not a case of a witness' credibility being impeachable on the basis of a prior criminal record. In such a situation (the trial judge mistakenly thought this was such a case), only a judgment of conviction could be shown. Here, though, D.L.'s credibility was subject to challenge, not because of any criminal record (she had none), but rather because the conditional dismissal of the criminal charge against her could have motivated her to testify in support of the State's case * * * [at 235]
In view of the fact that each of the witnesses was crucial to proof of the relevant counts in the indictment the error was prejudicial and calls for a reversal. However the error as to the named witnesses does not taint the entire verdict. It affects only the counts which may reasonably *178 have resulted in convictions as a result of the error. State v. Furey, 128 N.J. Super. 12, 24 (App. Div.), certif. den. 65 N.J. 578 (1974).
In our opinion the error involved only witnesses whose testimony was critical to the convictions on counts 10 and 12. Although it may be argued that the testimony of all the affected witnesses was material to the conviction on count 18 dealing with the maintenance of the premises, we conclude nevertheless that the presence of substantial other evidence from other witnesses in proof of that charge makes the error harmless as to that count. R. 2:10-2; State v. Macon, supra, 57 N.J. 325.

VI
Lastly, defendant urges that three of the counts upon which he was convicted should be reversed because the individuals to whom the drugs were dispensed were undercover agents. He contends that although entrapment was not raised as a defense, the failure of the trial judge to rule to that effect as a matter of law was error. He does not point out what judicial action should have been taken by the trial judge, or what action this court should take under the circumstances.
In any event, we reject this contention out of hand and will not consider the merits of an abstract proposition of law which was not before the court in any form by way of motion, request to charge or otherwise. See State v. Dennis, 43 N.J. 418, 424-425 (1964).

Conclusion
In view of the foregoing the judgment is affirmed on counts 3, 4, 5, 7, 16 and 17 as merged, and 18. Judgment on counts 10 and 12 is reversed and remanded for new trial.
NOTES
[1] Dispensing of controlled dangerous substances by a physician "in good faith * * * in the course of his professional practice only" exempts such a physician from the prohibitions and penalties of the legislation. N.J.S.A. 24:21-15.