207 N.J. Super. 114 (1986)
504 A.2d 37
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROGERS KELLY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 13, 1985.
Decided January 10, 1986.
*116 Before Judges MICHELS, DEIGHAN and STERN.
Thomas S. Smith, Acting Public Defender, attorney for appellant (Dennis J. Quinn, Designated Counsel, of counsel and on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (Mary Ellen Halloran, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Rogers Kelly was convicted of (1) the murder of Carl Grossman, a crime of the first degree, in violation of N.J.S.A. 2C:11-3; (2) unlawful possession of a handgun without having first obtained the requisite permit to carry the same, a crime of the third degree, in violation of N.J.S.A. 2C:39-5b; and (3) possession of a handgun for an unlawful purpose, a crime of the second degree, in violation of N.J.S.A. 2C:39-4a. Defendant's motions for a new trial following *117 the jury verdict were denied. The trial court thereupon merged the conviction for possession of a handgun for an unlawful purpose with the conviction for murder and committed defendant to the custody of the Commissioner of the Department of Corrections for 70 years, with a parole ineligibility term of 35 years, and assessed a penalty of $1,000.00, payable to the Violent Crimes Compensation Board. In addition, defendant was committed to a concurrent term of 5 years, with a 2 1/2 year period of parole ineligibility, and assessed a penalty of $25.00 for possession of a handgun without having first obtained the requisite permit to carry the same. Both custodial sentences were to be served consecutively to any sentence defendant was then serving for a prior parole violation. Defendant appeals.
Defendant seeks a reversal of his convictions or, alternatively, a modification of his sentences on the following grounds set forth in his brief:
I. THE TRIAL COURT ERRED IN RULING THAT THE DEFENDANT'S POST-ARREST VERBAL STATEMENTS TO THE POLICE WERE NOT OBTAINED IN VIOLATION OF EDWARDS v. ARIZONA, AND WERE, THEREFORE, ADMISSIBLE IN EVIDENCE AT THE DEFENDANT'S TRIAL.
II. THE TRIAL COURT ERRED IN PERMITTING USE AT TRIAL OF THE DEFENDANT'S INCRIMINATORY STATEMENTS WITHOUT CONSIDERATION OF THE DEFENDANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WHICH WAS ASSERTED IMMEDIATELY AFTER ARREST BY WARRANT.
III. THE TRIAL COURT ERRED IN NOT PERMITTING CROSS-EXAMINATION OF THE STATE'S WITNESS, KATHLEEN CAREY, TO SHOW POSSIBLE BIAS RESULTING FROM HER PERSONAL RELATIONSHIP WITH THE DECEDENT.
IV. THE TRIAL COURT COMMITTED ERROR IN REFUSING THE DEFENSE MOTION TO STRIKE THE TESTIMONY OF KATHLEEN CAREY THAT SHE HAD RECEIVED NUMEROUS PHONE CALLS FOR THE DECEDENT, CARL GROSSMAN, ALLEGEDLY MADE BY AN INDIVIDUAL IDENTIFYING HIMSELF AS ROGERS KELLY, THE DEFENDANT.
V. THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING INTO EVIDENCE TESTIMONY AS TO BLOOD ANALYSIS.
VI. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION AT THE CLOSE OF THE STATE'S CASE PURSUANT TO R. 3:18-1 TO ORDER THE ENTRY OF A JUDGMENT OF ACQUITTAL *118 ON COUNT 3 OF THE INDICTMENT SINCE THE EVIDENCE WAS INSUFFICIENT TO WARRANT CONVICTION.
VII. THE TRIAL COURT COMMITTED ERROR IN SENTENCING DEFENDANT KELLY ON COUNT I TO INCARCERATION FOR A PERIOD OF 70 YEARS WITH A PAROLE INELIGIBILITY PERIOD OF 35 YEARS.
VIII. THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR MISTRIAL UPON DETECTIVE HALLIDAY'S ADDED USE OF THE WORD "EXTORTION" DURING TRIAL BEFORE THE JURY.
IX. THE NUMEROUS ERRORS AT TRIAL CONSIDERED IN THE AGGREGATE AND CUMULATIVELY BROUGHT ABOUT AN UNJUST RESULT REQUIRING A NEW TRIAL.
We have carefully considered these contentions and all of the arguments advanced by defendant in support of them and find that, with the exception of the challenge to the legality of the sentence (Point VII), they are clearly without merit. R. 2:11-3(e)(2). Further comment is appropriate, however, with respect to several of these points before we turn to a consideration of the challenge of the legality of the sentence.

A.
The trial court did not err in refusing to permit cross-examination of the State's witness, Kathleen Carey, concerning her relationship with the murder victim, Carl Grossman. It is fundamental that trial courts have been accorded broad discretion in determining the proper limitations of cross-examination of witnesses on issues of credibility. State v. Pontery, 19 N.J. 457, 473 (1955); State v. Zwillman, 112 N.J. Super. 6, 17-18 (App.Div. 1970), certif. den., 57 N.J. 603 (1971). See also State v. Smith, 101 N.J. Super. 10, 14 (App.Div. 1968), certif. den., 53 N.J. 577 (1969) (trial court has "discretion to determine how far details [of bias] may be allowed to be brought out").
Statutory law in New Jersey provides that "[f]or the purpose of affecting the credibility of any witness, his interest in the result of the action ... may be shown by examination or otherwise." N.J.S.A. 2A:81-12. Similarly, the New Jersey Rules of Evidence provide that "for the purpose of impairing or *119 supporting the credibility of a witness, any party ... may examine him and introduce extrinsic evidence relevant upon the issue of credibility." Evid.R. 20. However, these rules limit the admissibility of evidence affecting credibility by further providing that evidence of traits of character, other than honesty or veracity or their opposites, is inadmissible. Evid.R. 22(c). In addition, the New Jersey Rules of Evidence provide, with respect to all evidence, that:
A judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will ... create substantial danger of undue prejudice or of confusing the issues or of misleading the jury. [Evid.R. 4].
See State v. Vaccaro, 142 N.J. Super. 167, 177 (App.Div. 1976), certif. den., 71 N.J. 518 (1976) (cross-examination on issue of bias or prejudice may be limited by court in appropriate case because of remoteness or other grounds within the ambit of Evid.R. 4); State v. Thompson, 59 N.J. 396, 421 (1971) (where the probative value of evidence "is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation" the evidence is inadmissible).
Therefore, the right of the defense to show the interest of a witness "does not mean ... that the cross-examiner has a license to roam at will under the guise of impeaching the witness." State v. Pontery, supra, 19 N.J. at 473. In State v. Arbus, 54 N.J. Super. 76, 83 (App.Div. 1959), we noted that "more sins of admission have been committed during cross-examination in the name of `credibility' than because of any other misconception in the law of evidence." See 3A Wigmore, Evidence § 878 at 648 (Chadbourn rev. 1970) (cross-examination is not universal solvent for reducing everything to admissibility).
Here, Carey's interest or bias had already been adequately highlighted at trial through repeated references to her employment as Grossman's secretary and to her attendance at his funeral. If, as defendant asserts, the only reason for the *120 disputed cross-examination was to show that the witness had a personal interest in the outcome of the trial, this had already been shown sufficiently. Any further testimony as to Carey's alleged relationship with a married man, would have served no legitimate evidentiary purpose and would have violated Evid.R. 22, which proscribes the use of evidence of character traits other than honesty or veracity (or the lack thereof) to impugn credibility. Therefore, the trial court's limitation of the cross-examination of Carey was entirely proper. See State v. Cranmer, 134 N.J. Super. 117, 122 (App.Div. 1975), certif. den., 68 N.J. 283 (1975) (limitation of cross-examination upheld as non-violative of constitutional right of confrontation). Cf. Graf v. Folarno, 99 N.J. Super. 173, 177 (App.Div. 1968), certif. den., 51 N.J. 463 (1968) (cross examination in error because it "did not of itself relate to any legitimate question of the [witness's] credibility or qualifications").
Beyond this, in view of the overwhelming evidence of guilt, the "error" alleged by defendant did not reach dimensions "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

B.
The trial court properly refused to strike the testimony of Carey that she had received numerous telephone calls for the victim, Grossman, made by an individual identifying himself as Rogers Kelly. In addition to the reasons expressed by the trial court in denying defendant's motion, it is perfectly clear that the State did not seek to prove the substance of these telephone calls. Rather, the testimony was offered only to show that defendant made at least 6 attempts to reach Grossman by telephone. Cf. State v. Hudson, 38 N.J. 364, 372 (1962) (testimony that within an hour of homicide deceased received a disturbing telephone call admissible despite lack of identification of caller).
*121 When viewed in this light, Carey's testimony was clearly admissible as non-hearsay, as it was not offered to prove the truth of any assertion of fact made by the caller during the conversation. The testimony with respect to the calls was proffered only as verbal conduct that calls were placed by someone who identified himself as defendant. Cf. State v. Humanik, 199 N.J. Super. 283, 306 (App.Div. 1985) (oral statements not inadmissible as hearsay where they constituted verbal acts and were not offered to prove truth of their contents); Robinson v. Branch Brook Manor Apartments, 101 N.J. Super. 117, 122 (App.Div. 1968), certif. den., 52 N.J. 487 (1968) (testimony regarding telephone calls not hearsay when offered as verbal conduct showing discriminatory activity).

C.
The trial court properly admitted testimony regarding the results of an analysis of the blood spots found in defendant's truck. The results of such "scientific tests are admissible at a criminal trial only when they are shown to have `sufficient scientific basis to produce uniform and reasonably reliable results and will contribute materially to the ascertainment of the truth.'" Romano v. Kimmelman, 96 N.J. 66, 80 (1984) (quoting State v. Cary, 49 N.J. 343, 352 (1967)). Blood testing results were specifically considered in State v. Beard, 16 N.J. 50, 58-59 (1954), where the Supreme Court rejected the contention that testimony indicating that defendant's clothes contained human blood, of the same type as the victim, was inconclusive because 46 percent of the population was found to have blood of that type. In reaching this conclusion the Beard Court opined:
No one circumstance standing alone would be sufficient to prove the defendant guilty of the crime laid against him, but each fact, taken in connection with others as constituting a chain of circumstances tending to corroborate the State's case and to support the inference that the accused was the person who committed the crime, was admissible in evidence. Additionally, in Morton v. U.S., 79 U.S.App.D.C. 329, 147 F.2d 28 (C.A.D.C. 1945), the court ruled the *122 objection made by the defendant to blood tests and various tests related to them is applicable to the weight of the evidence and not its admissibility.

The blood stains were a link in the chain of evidence forged by the State and were entitled to be weighed, with the other evidence presented, by the jury in arriving at its conclusion. [State v. Beard, supra, 16 N.J. at 58-59 (Emphasis supplied)].
The right of the State to present evidence regarding similarities in blood type was similarly recognized in State v. Alexander, 7 N.J. 585, 596 (1951), cert. den., 343 U.S. 908, 72 S.Ct. 638, 96 L.Ed. 1326 (1952), where the court affirmed the State's right to use defendant's blood to show that it was of the same type as that found on the murder weapon, even when a blood sample was taken against defendant's will. Cf. State v. Baldwin, 47 N.J. 379, 391-392 (1966), cert. den., 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966) (expert testimony comparing soil taken from automobile with soil from dirt road near murder scene and comparing hair particles in comb found near body with those of defendant was admissible).
Even though the blood analysis testing done after the Grossman murder was not conclusive as to the source of the blood specimens found in defendant's truck, it was still relevant because such evidence rendered the desired inference  that Grossman had been in the vehicle  more probable than it would have been without the evidence. See State v. Davis, 96 N.J. 611, 619 (1984); State v. Coruzzi, 189 N.J. Super. 273, 302 (App.Div. 1983), certif. den., 94 N.J. 531 (1983). The probative value of this evidence, therefore, was not outweighed by its potential for prejudice. Evid.R. 4. The probative value of this testimony was to place the victim within the proportion of the population which had blood similar to that found in the truck. Since both the prosecution and the defense adduced testimony from Frances Gdowski, the New Jersey State Police Forensic Chemist, with respect to the inconclusiveness of her test results, the possibility of prejudice based upon over-speculation was extremely limited. See State v. Baldwin, supra, 47 N.J. at 392 (expert testimony that hair particles on comb "were of a general category within which defendant's hair would fall" was *123 not too speculative to be admissible). We are satisfied, therefore, that the trial court did not mistakenly exercise its discretion in ruling on this issue.
Defendant's reliance on two out-of-state cases, People v. Robinson, 27 N.Y.2d 864, 317 N.Y.S.2d 19, 265 N.E.2d 543 (Ct.App. 1970) and People v. Macedonio, 42 N.Y.2d 944, 397 N.Y.S.2d 1002, 366 N.E.2d 1355 (Ct.App. 1977), which held that evidence of a defendant's blood type should be accorded no probative value when a large proportion of the general population is shown to have blood of the same type, is not persuasive, particularly in view of a plethora of authority from other states supporting the use of blood testing results as evidence of whether certain blood is that of a particular person. See e.g., People v. Vallez, 80 Cal. App.3d 46, 143 Cal. Rptr. 914, 920 (Ct.App. 1978) (trial court did not err in allowing expert testimony regarding blood typing of stains, despite fact that 40 percent of world's population had Type A blood); People v. Henderson, 83 Ill. App.3d 854, 39 Ill.Dec. 8, 18-19, 404 N.E.2d 392, 402-403 (Ct.App. 1980) (no error in trial court's admitting evidence that defendant had Type A blood, although defendant had contended it was of little or no probative value since 40 to 43 percent of general population have blood of that type); State v. Mark, 286 N.W.2d 396, 412-413 (Iowa Sup.Ct. 1980) (trial court properly admitted evidence that cigarettes found at murder scene had been smoked by person with Type O blood since probative value was not outweighed by prejudicial effect, even though 80 percent of population secreted evidence of blood type in saliva and 45 percent had Type O blood); State v. Bolder, 635 S.W.2d 673, 688-689 & n. 12 (Mo.Sup.Ct. 1982), cert. den., 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983) (testimony of forensic serologist as to blood type on murder weapon properly admitted, despite defendant's objection of remoteness, since blood type was that of 45 percent of population and related to its weight, rather than its admissibility).
*124 Accordingly, the trial court did not commit error, let alone plain error, by admitting Ms. Gdowski's testimony with respect to the blood analysis.

D.
Finally, we consider defendant's challenge to the legality of the sentence imposed upon him for murder. The trial court sentenced defendant to an extended term of imprisonment of 70 years, with a 35 year period of parole ineligibility, pursuant to the provisions of N.J.S.A. 2C:43-7. Defendant contends that this sentence was illegal in view of the sentencing options of N.J.S.A. 2C:11-3b, as amended and in effect at the time of his sentence in November 1982.
At the time of the commission of the crime in January 1982, N.J.S.A. 2C:11-3b[1] of the Code of Criminal Justice provided:
Murder is a crime of the first degree but a person convicted of murder may be sentenced by the court (1) to a term of 30 years of which the person must serve 15 years before being eligible for parole, or (2) as in a crime of the first degree except that the maximum term for such a crime of the first degree shall be 30 years. Nothing contained in this subsection shall prohibit the court from imposing an extended term pursuant to 2C:43-7 for the crime of murder.
In January 1982, extended term sentences for murder were governed by N.J.S.A. 2C:43-7. N.J.S.A. 2C:43-7a(1)[2] specifically *125 provided that a person convicted of a crime could be sentenced to an extended term of imprisonment as follows:
In the case of a crime sentenced under 2C:11-3 for a specific term of years which shall be between 30 years and life imprisonment.
In January of 1982, N.J.S.A. 2C:43-7b provided, as it does now, that:
As part of a sentence for an extended term and notwithstanding the provisions of 2C:43-9, the court may fix a minimum term not to exceed one-half of the term set pursuant to subsection a. during which the defendant shall not be eligible for parole or a term of 25 years during which time the defendant shall not be eligible for parole where the sentence imposed was life imprisonment provided that no defendant shall be eligible for parole at a date earlier than otherwise provided by the law governing parole.
Therefore, at the time of the commission of this murder, the maximum sentence that could be imposed for murder was life imprisonment, with a 25 year period of parole ineligibility. Since 25 years was the parole ineligibility term for the maximum sentence (life imprisonment), it follows logically that a greater ineligibility term could not be imposed for a lesser sentence.
This conclusion is confirmed when N.J.S.A. 2C:43-7b is read in conjunction with N.J.S.A. 30:4-123.51b of the Parole Act of 1979. The latter statute provides that:
Each adult inmate sentenced to a term of life imprisonment shall become primarily eligible for parole after having served any judicial or statutory mandatory minimum term, or 25 years where no mandatory minimum term has been imposed less commutation time for good behavior and credits for diligent application to work and other institutional assignments. If an inmate sentenced to a specific term or terms of years is eligible for parole on a date later than the date upon which he would be eligible if a life sentence had been imposed, then in such case the inmate shall be eligible for parole after having served 25 years, less commutation time for good behavior and credits for diligent application to work and other institutional assignments. Consistent with the provisions of the New Jersey Code of Criminal Justice (N.J.S. 2C:11-3, 2C:14-6, 2C:43-6, 2C:43-7), commutation and work credits shall not in any way reduce any judicial or statutory mandatory minimum term and such credits accrued shall only be awarded subsequent to the expiration of the term. [N.J.S.A. 30:4-123.51b (Emphasis supplied)].
N.J.S.A. 30:4-123.51b, therefore, requires that an individual sentenced to life imprisonment be eligible for parole after having served a "statutory mandatory minimum term, or 25 *126 years where no mandatory minimum term has been imposed." It further requires that when an inmate sentenced to a term of years "is eligible for parole on a date later than the date upon which he would be eligible if a life sentence had been imposed ... [he] shall be eligible for parole after having served 25 years." Consequently, where a life sentence is imposed, the Parole Act of 1979 limits the maximum period of parole ineligibility to 25 years. Accordingly, under the circumstances of this case, although the trial court could properly sentence defendant to an extended term of 70 years, it could not impose a term of parole ineligibility in excess of 25 years.
Therefore, except to modify defendant's sentence to reduce the parole ineligibility term of his murder sentence to 25 years, the judgment of conviction and the order of commitment under review are affirmed. The matter is remanded to the trial court for the entry of an amendatory judgment consistent with the views expressed herein.
NOTES
[1] N.J.S.A. 2C:11-3b was amended by L. 1982, c. 111, § 1, effective August 6, 1982 to read:

Murder is a crime of the first degree but a person convicted of murder may be sentenced, except as provided in subsection c. of this section, by the court to a term of 30 years, during which the person shall not be eligible for parole or to a specific term of years which shall be between 30 years and life imprisonment of which the person shall serve 30 years before being eligible for parole.
Consequently, since August 6, 1982, a person convicted of murder who has not been sentenced to death must serve 30 years before becoming eligible for parole.
[2] N.J.S.A. 2C:43-7a(1) was deleted by L. 1982, c. 111, § 2, effective August 6, 1982.