# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2913-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDISSON SHUMI-
PALAGUACHI, a/k/a
EDISSON SHUMI
PALAGUACHI,
EDDY ZHUMI,
EDDISSON SHUMI,
EDISON SHUMI,
and EDISON ZHUMI,

    Defendant-Appellant.

_____

Submitted April 8, 2025 – Decided June 9, 2025

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 23-05-1022.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Michael Kenney, Assistant Deputy Public Defender, of counsel and on the briefs).

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Shep A. Gerszberg, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Edisson Shumi-Palaguachi of second-degree sexual assault of a fourteen-year-old girl, N.J.S.A. 2C:14-2(c)(4), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). Defendant was sentenced to seven years in prison, required to report and register under Megan's Law, N.J.S.A. 2C:7-1 to -23, and to parole supervision for life.

He appeals his convictions, arguing that the trial court erred in allowing the victim to give hearsay testimony. Defendant also argues that the testimony was fresh complaint testimony, and the court further erred by not giving the proper instruction concerning fresh complaint testimony. Defendant also challenges his sentence, contending that the trial court failed to make adequate findings concerning the aggravating and mitigating factors. Because the victim's testimony was not hearsay and was not fresh complaint testimony, we affirm his convictions. However, because the sentencing court did not make express findings of facts on the aggravating and mitigating factors, we remand for resentencing.

I.

We discern the facts from the record, including the testimony provided at trial by the victim, L.F. (Linda).[1]

Linda testified that on March 13, 2020, when she was fourteen years old, she and a friend, A.W. (Alice), went to a party in Newark because Linda had seen an Instagram posting that there was a party with disc jockeys (DJs). So, Linda and Alice traveled to Newark by train from Alice's home in Brooklyn, New York.

Linda explained that when she and Alice initially arrived in Newark, they went to a club. Thereafter, at approximately midnight, Linda, Alice, and two of Alice's friends went to a party at a house in Newark.

At the house party, Linda met defendant, who came over to Linda and Alice and offered them drinks. Linda identified defendant at trial and explained that she first met him at the house party, and she referred to him by the name "Ed."

After Linda finished one drink, she got up to go to the bathroom. Defendant followed Linda, pulled her into a bedroom, and locked the bedroom

---

[1] We use initials and fictitious names for the victim and witnesses to protect the privacy interests of a victim who was sexually assaulted when she was a minor. R. 1:38-3(c)(9), (12).

A-2913-23

door. While standing behind Linda, defendant pulled down her pants and underwear and pulled down his pants and underwear. Defendant then pushed Linda "belly down" against a bed. While holding Linda's head down with one hand on her neck and another hand covering her mouth, defendant penetrated Linda's vagina with his penis.

Linda recalls that the sexual assault lasted for approximately five minutes. She explained that she tried to resist the assault, but defendant held her down. She also explained that she could not call out for help because defendant had his hand over her mouth.

When the assault ended, defendant pulled up his pants and Linda tried to leave the bedroom. Defendant, however, pulled Linda away from the door, threw her to the floor, and told her that if she told anyone about what had happened, they would not believe her because he knew several police officers. Defendant then took a taser out of his pants pocket and threatened to kill Linda.

When defendant left the bedroom, Linda went to the bathroom, locked the door, and called Alice using her cell phone. Alice, who was in the living room, came to the bathroom. At trial, Linda was then asked the following questions and gave the following answers:

> Q. Okay. Now did [Alice] ultimately join you in the bathroom?

4

A.     Yes.

Q.     And what happened when she came in?

A.     I was crying and she asked me what had happened.

Q.     Did you tell her what happened?

A.     Yes.

Alice and Linda then left the house in an Uber car and traveled back to Alice's house in Brooklyn.  Linda explained that initially she did not tell her mother what had happened because she was afraid of defendant.

Thereafter, Linda's mother received a phone call and a text message from someone who told her that Linda had been assaulted at a party.  Linda's mother then spoke to Linda, who disclosed what had happened.  On May 29, 2020, Linda, her parents, and Alice went to the police in Newark to report the assault.

Following an investigation, a grand jury indicted defendant for second-degree sexual assault; third-degree endangering the welfare of a child; third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7).

Defendant elected not to testify at trial.  He called two witnesses who had been present at the house party on March 13 and 14, 2020.  Those witnesses,

A-2913-23

who both knew defendant, testified that Linda had initially been with them and defendant earlier in the evening, and that they had all then traveled to the party where defendant was the DJ. When that party ended, they had all returned to defendant's house. Both witnesses testified that Linda was only at the house for a short period of time after they returned from the party. The witnesses also stated that Linda had come back to the house the following morning and defendant had driven her to the train station.

After hearing all the testimony and considering the evidence, the jury convicted defendant of second-degree sexual assault and third-degree endangering the welfare of a child. The jury acquitted defendant of the weapons and aggravated assault charges.

At sentencing, the court merged the endangering conviction with the sexual assault conviction. On the sexual assault conviction, defendant was sentenced to seven years in prison. Defendant was also required to register and report under Megan's Law and sentenced to parole supervision for life. The court also enjoined defendant from having any contact with the victim under Nicole's Law, N.J.S.A. 2C:14-12.

II.

On appeal, defendant makes two arguments, which he articulates as follows:

> POINT I – THE TRIAL COURT ERRED BY ADMITTING HEARSAY TESTIMONY OBSTENSIBLY UNDER THE FRESH COMPLAINT DOCTRINE AND THEN FAILING TO INSTRUCT THE JURY AS TO THE NARROW PURPOSE OF SUCH TESTIMONY.
>
> POINT II – [DEFENDANT] MUST BE RESENTENCED BECAUSE THE TRIAL COURT DID NOT ADEQUATELY EXPLAIN THE FACTUAL BASIS FOR FINDING AGGRAVATING FACTORS THREE AND NINE, OR ASSIGN[ING] ANY SPECIFIC WEIGHT TO THE AGGRAVATING OR MITIGATING FACTORS.

A.    The Alleged Hearsay Testimony.

Defendant challenges his convictions by arguing that the trial court erred in allowing Linda to give hearsay testimony. Defendant then argues that the testimony may have been admissible as fresh complaint evidence, but the trial court compounded its error by not instructing the jury on the limited use of fresh complaint testimony.

The testimony defendant challenges is Linda's statement that when Alice joined her in the bathroom, Linda was asked if she told Alice what happened, and Linda responded: "Yes." Linda's testimony was neither hearsay testimony nor was it fresh complaint testimony.

7

Hearsay is "a statement . . . [other than one made by] the declarant . . . while testifying at the . . . trial or hearing . . . offer[ed] in evidence to prove the truth of the matter asserted."  N.J.R.E. 801(c).  The New Jersey Supreme Court has explained:

> [T]he hearsay rule applies when a declaration is offered to prove the truth of the statement attributed to the declarant.  It follows, therefore, that if evidence is not offered for the truth of the matter asserted, the evidence is not hearsay and no exception to the hearsay rule is necessary to introduce that evidence at trial.  But if proffered evidence is hearsay, it can be admitted only pursuant to one of the exceptions to the hearsay rule.
>
> [Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 376 (2007) (quoting State v. Long, 173 N.J. 138, 152 (2002)).]

Linda's testimony that she told Alice what had happened was not hearsay testimony.  Linda did not state what she had told Alice; rather, she simply stated that she had told Alice what had happened.  In other words, she did not explain what she told Alice or make any statements conveying what she said to Alice.  Moreover, Linda gave her testimony in court.  "[S]tatements . . . offered, not for the truthfulness of their contents, but only to show that they were in fact made and that the listener took certain action as a result" are "not . . . inadmissible hearsay."  Carmona, 189 N.J. at 376 (internal quotation marks omitted).  See also State v. Kelly, 207 N.J. Super. 114, 121 (App. Div. 1986) (holding that

8

testimony regarding the fact that calls were made was admissible and not hearsay because it was "not offered to prove the truth of any assertion of fact made by the caller during the conversation").

Linda's testimony was also not fresh complaint testimony. "The fresh-complaint rule allows witnesses in a criminal trial to testify to a victim's complaint of sexual assault." State v. Hill, 121 N.J. 150, 151 (1990). The doctrine of fresh complaint testimony was developed "to counteract the persistent 'timing myth' that victims of sexual assault would cry out and alert others to the crime." State v. W.B., 205 N.J. 588, 616 (2011) (quoting State v. P.H., 178 N.J. 378, 392 (2004)). So, the fresh complaint exception allows the State to neutralize that myth by "introducing evidence that the victim . . . [made] a complaint within a reasonable time after the alleged assault." Ibid. (citing P.H., 178 N.J. at 392).

Linda responded "Yes" to the question of whether she told Alice what had happened. Thus, that testimony was not Alice testifying as to what Linda told her; rather, it was Linda's limited testimony that she told Alice what happened. Moreover, as already pointed out, Linda did not tell the jury what she told Alice. Accordingly, Linda's testimony was not fresh complaint evidence.

Furthermore, defendant did not object to Linda's testimony at trial. He raised these issues for the first time on appeal. Appellate courts review a trial judge's evidentiary rulings under an abuse of discretion standard. State v. Kuropchak, 221 N.J. 368, 385-86 (2015); State v. P.S., 202 N.J. 232, 250 (2010). When an objection is not made at trial, appellate courts review the alleged error for plain error. See R. 2:10-2; State v. Branch, 182 N.J. 338, 353 (2005). "[A]n unchallenged error constitutes plain error if it was 'clearly capable of producing an unjust result,'" State v. Singh, 245 N.J. 1, 13 (2021) (quoting R. 2:10-2), and raises a "'reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached,'" State v. Scott, 229 N.J. 469, 484 (2017) (alteration in original) (quoting State v. R.B., 183 N.J. 308, 330 (2005)).

Because we have determined that Linda's testimony was not hearsay testimony nor was it fresh complaint testimony, we discern no abuse of discretion. We also discern no plain error. In that regard, we point out that in applying the plain error standard, a court must evaluate the alleged errors "in light of the overall strength of the State's case." State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)). Linda's limited testimony that she told Alice what happened to her does not rise to the level of plain error because it does not undercut Linda's extensive and

admissible testimony during which she told the jury how defendant sexually assaulted her.

B. The Sentence.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018) (first citing State v. Robinson, 217 N.J. 594, 603 (2014); and then citing State v. Blackmon, 202 N.J. 283, 297 (2010)). In that regard, an appellate court will affirm a sentence unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

When imposing a sentence, trial courts must "explain and make a thorough record of their findings to ensure fairness and facilitate review." State v. Comer, 249 N.J. 359, 404 (2022). See also State v. Torres, 246 N.J. 246, 272 (2021) (requiring an "explanation for the overall fairness of a sentence"); Fuentes, 217 N.J. at 74 (explaining that "[a] clear and detailed statement of reasons is thus a

crucial component of the process conducted by the sentencing court, and a prerequisite to effective appellate review"). "Proper sentencing thus requires an explicit and full statement of aggravating and mitigating factors and how they are weighed and balanced." State v. McFarlane, 224 N.J. 458, 466 (2016) (quoting State v. Randolph, 210 N.J. 330, 348 (2012)). In other words, a "sentencing court [must] explain clearly why an aggravating or mitigating factor presented by the parties was found or rejected and how the factors were balanced to arrive at the sentence." State v. Case, 220 N.J. 49, 66 (2014) (citing Fuentes, 217 N.J. at 73).

In sentencing defendant, the trial judge found aggravating factor three, risk of re-offense, N.J.S.A. 2C:44-1(a)(3), and factor nine, the need to deter further criminal activity, N.J.S.A. 2C:44-1(a)(9). Regarding the mitigating factors, the trial court found mitigating factor seven, that the defendant had no prior history of delinquency or criminal activity, N.J.S.A. 2C:44-1(b)(7), and factor eight, that defendant's conduct was the result of circumstances unlikely to recur, N.J.S.A. 2C:44-1(b)(8). The trial court judge articulated his findings concerning the aggravating and the mitigating factors as follows:

> The Court does find aggravating factors three and nine. The Court finds mitigating factors seven and eight. The aggravating and mitigating factors are in equipoise.

12

The findings on the aggravating and the mitigating factors were not sufficiently detailed "to ensure fairness and facilitate review." Comer, 249 N.J. at 404. The sentencing court did not explain why it found aggravating factors three and nine. Nor did the court explain why and what facts supported its findings of mitigating factors seven or eight. The court's conclusory statement also does not allow us to determine whether the court considered all the aggravating and mitigating factors, particularly those factors identified by defense counsel at the sentencing hearing. Finally, the court did not explain its balancing of the factors. See Case, 220 N.J. at 66 (citing Fuentes, 217 N.J. at 73) (requiring an explanation of the balancing of the factors).

We therefore remand for resentencing. In doing so, we express no view on the length of the sentence imposed. Nevertheless, we note that the seven-year sentence was in the mid-range of the range for a second-degree criminal conviction. See N.J.S.A. 2C:43-6(a)(2).

Affirmed in part, reversed in part, and remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13